## The Kalamazoo Novelty Manufacturing Company v. Norman M. McAlister.

*Corporations: Officers: Treasurer: General authority.* It is not within the general power and province of the treasurer of a corporation, without special authority, to issue written admissions, which shall bind the company, of the amount due upon a disputed claim for salary of other agents of similar grade.

*Corporations: Superintendent: Salary: Admissions.* In an action for a balance claimed to be due the plaintiff for services as superintendent of a corporation, a certificate by the treasurer of the company, who was also consulting director, that the company was indebted to plaintiff in a given sum for balance of salary, is not admissible in evidence as an admission binding on the company, in the absence of any showing of authority in such treasurer and consulting director to make such admissions.

*Jury: Taking documents to jury-room.* It is sometimes proper to allow the jury to take to the jury-room documents which have been admitted in evidence, but it should not be allowed except in cases where the propriety of it is very obvious, and in general not when either party objects.

*Taking book to jury-room: Parts not in evidence.* The permitting the jury against objection to take with them to their room a book of which only three pages had been introduced in evidence, with no other safeguard against their examining and giving consideration to those parts of the book which had not been made evidence, except a direction to them to look only on a specified page, is held to be error.

*Heard April 13. Decided April 18.*

Error to Kalamazoo Circuit.

*Robert F. Hill,* for plaintiff in error, on the point that Kellogg could not bind defendant by the certificate admitted in evidence, cited: *Peek v. Detroit Novelty Works, 29 Mich., 313; National Bank v. Norton, 1 Hill, 579; Junction R. R. Co. v. Reeve, 15 Ind., 236; Ang. & Ames on Corp.,* § *277; Neale v. Turton, 4 Bing., 148;* and on the point as to permitting the jury to take to the jury-room the book: *1 Green Pr., 267; 1 Burr. Prac., 235; Neil v. Abiel, 24 Wend., 185; F. & M. Bk. v. Winchfield, Ibid., 419.*

*Elbert S. Roos* and *Arthur Brown,* for defendant in error, on the admissibility of the certificate in evidence as an admission, cited: *29 Mich., 313; Blanchard v. Inhab. of Blackburn, 102 Mass., 347; Morse v. Conn. R. R. Co., 6 Gray, 450; Curtis v. Avon Cen. R. R. Co., 49 Barb., 148.*

GRAVES, J:

The company is a corporation, and McAlister, claiming that it owed him a certain balance for services as superin-

tendent, brought this suit to recover it. The alleged employment arose under a resolution of the directors, in these terms: "Resolved that Mr. N. M. McAlister be appointed superintendent of the Kalamazoo Novelty Manufacturing Company for the term of two years, provided he gives satisfaction to the company, at a salary of fifteen hundred dollars per annum."

It appears also, that F. I. Kellogg, who was treasurer, was constituted "consulting director," "with whom the superintendent was to advise." McAlister was allowed to recover six hundred and eighty-seven dollars and fourteen cents, and the company allege error.

To prove that there was a balance due him from the company, and to establish its amount, he was allowed, after some preliminary testimony in regard to the time he was occupied in the company's service, to introduce, against the objection of the company, the following paper:

"$622.21.                    KALAMAZOO, May 29th, 1874.

"This is to certify that the Kalamazoo Novelty Manufacturing Company is indebted to N. M. McAlister, late superintendent of said company, in the sum of six hundred and twenty-two dollars and twenty-one cents for balance of salary.                    F. I. KELLOGG,

"*Treasurer Kalamazoo Novelty Company.*"

No account of McAlister had been presented to the company or board of directors. He had asked for a settlement but there had been no audit. He swore he could not fix the amount due him except by this paper. The instrument was introduced and received as an admission of the company of the fact of indebtedness and of the amount.

This we think was error. It could not be entitled to reception in evidence as an admission of the corporation without its being made to appear that Kellogg had authority to make it as an act of the corporation.—*Green's Brice,* 425 *and note.* There was no direct evidence of such authority. No by-law or resolution conveying the power was shown.

His position as consulting director implied no power to

liquidate and fix the sum which the company should pay Mc-Alister or to state the amount fixed as a fact admitted by the company. Moreover, the paper in question, though made as McAlister insists on much deliberation, was neither drawn or received as performed by Kellogg in character of consulting director. On its face it professes expressly to have emanated from his authority as treasurer. That it was within his power and province in that capacity, cannot be assumed. The document is not a mere transcript or brief from the company's books, and was not adduced as such. It imports that it was ascertained and determined that the company was in fact the debtor of McAlister to the specified amount, and it was put in evidence as an admission of the company to that effect. The general duty of the treasurer of a private corporation is to collect, receive, hold and disburse the funds, and unless specially empowered, his authority could not be supposed to extend so far as to allow him to settle and audit disputed claims brought for salaries by other agents of similar grade, and to issue written admissions of his determination binding on the corporation.

Such duties would regularly fall on the board of directors, and the evidence in the case goes to strengthen the inference that such was the fact here. The resolution relied on by McAlister, tends to show that it was for the board to speak on the part of the company concerning his wages, and not the treasurer, and he testified that it was the board who called on him to quit.

In the progress of the trial the secretary's book of records was produced, and some three pages of its contents were admitted in evidence.

On submitting the case to the jury, the judge allowed them, against the objection of counsel for the corporation, to take with them to their room the book in question, and directed them to look only on page forty-four. The record is not so framed as to enable us to say whether the court was warranted in confining the jury to one of the three pages of the book which were given in evidence, or not.

36 MICH.—42.

That it is sometimes proper to allow documents in evidence to be taken to their room by the jury, is beyond question; but the practice is one which is exposed to much risk, and it ought not to be allowed except in cases where the propriety of it is very obvious.    And in general it should not be indulged when either party objects.    Still cases are liable to arise in which justice would require it, and where refusal to consent would be unreasonable, and on such occasions the dissent ought not to prevail.    It is hardly safe to attempt a definition of the proper rule by the mention of the exact documents or kinds of documents which should be suffered to go to the jury-room.    In the present case the entire book was suffered to be taken, when but three pages were in evidence.    The effect was to allow to be taken, and against objection, considerable matter which was not in evidence, and the only security consisted in the direction to the jury to confine their attention to one page.    This was error.    It can scarcely be claimed that an instruction not to look at unproved matter should be taken as relieving its admission to the jury-room from error.    The books speak of effectually sealing up parts of documents when part is submitted to investigation and part is withheld from it.    But I am not aware that the practice has been applied to such cases as this, and am not prepared to say it ought to be.

The other questions cease to be of any importance in the case.

The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.